UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

HECTOR M. DONES FIGUEROA,

      Plaintiff,

v.                                                              Case No:  6:11-cv-1675-Orl-28TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## REPORT AND RECOMMENDATION[1]

The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under the Act. I have reviewed the record, including a transcript of the proceedings before the administrative law judge ("ALJ"), the exhibits filed, administrative record, and the pleadings and memoranda submitted by the parties.  For the reasons that follow, I respectfully recommend that the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

### I.    Background

Plaintiff was born July 7, 1962 and has a fifth grade education[2] (Tr. 156, 45 and 60).  He is able to communicate in English, but testified at the hearing with the assistance

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

of a Spanish interpreter (Tr. 25, 32, 178-179). His past work experience is as a security guard (Tr. 32, 180).

On June 19, 2008, Plaintiff had a total thyroidectomy for follicular variant of papillary thyroid cancer (stage 1) performed at Florida Hospital (Tr. 317-320).  On July 15, 2008, he saw Dr. Sandeep Bajaj at Florida Cardiology for a physical examination (Tr. 338-339).  Dr. Bajaj's impression was fatigue, shortness of breath-potential anginal equivalent, diabetes mellitus, hypertension, hyperthyroidism, abnormal EKG and morbid obesity (Tr. 339).

In September 2008 and January 2009, Plaintiff told his endocrinologist, Dr. Constant, that he had no headaches or dizziness despite taking atenolol, lisinopril, synthroid, glipzide, and niacin (Tr. 305, 531-532, and 536-537).

On December 1, 2008, Plaintiff had a generalized seizure while working as a security guard at a construction site (Tr. 360-361).  He fell and bruised the left side of his face and bit the left side of his tongue (Tr. 360).  He was seen by Dr. Ronald B. Oppenheim, M.D. at Florida Hospital for treatment (Tr. 360-361). Dr. Oppenheim noted Plaintiff had a history of seizures from when he was 13 to 18 years old and that Plaintiff had taken medication during this time (Tr. 360).  On the day of his seizure, Plaintiff had been working a fourteen hour shift.  (Id.).  It was determined that sleep deprivation could cause Plaintiff's seizures.  (Id.).  Plaintiff had not experienced seizures since the age of 18 and had not taken any medication for his condition since that time. (Id.).  Dr. Oppenheim prescribed Plaintiff Depakote and told him he would "have to refrain from driving for 6 months, avoid driving company vehicles permanently, avoid working in

---

[2] A Disability Report completed on October 17, 2008 mistakenly indicated that Plaintiff received a general education diploma in 2003.

dangerous situations, avoid working at heights, and avoid working in potentially dangerous settings such as construction sites" (Tr. 361).

On December 22, 2008, Plaintiff saw psychologist, Magaly Delgado for a consultative examination at the request of the Department of Disability Determinations (Tr. 397-399). Plaintiff reported occasional anxiety and "occasional depressed mood, difficulty sleeping, good appetite, poor concentration, low energy, feelings of worthlessness, feelings of excessive guilt, feelings of hopelessness, and occasional irritability" (Tr. 398). Dr. Delgado found Plaintiff's memory for remote events was poor and his memory for recent events was fair. (Id.). The doctor also found Plaintiff's intellectual functioning was "likely in a below average range based on his educational and occupational history." (Id.). Dr. Delgado's diagnostic impression was adjustment disorder with mixed anxiety and depressed mood; diabetes, hypertension, epilepsy, high cholesterol and history of thyroid cancer (per Plaintiff's report); and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55[3] (Tr. 399).

On January 16, 2009, a non-examining state agency consultant reviewed the record and concluded Plaintiff had moderate difficulties maintaining concentration, persistence or pace and that Plaintiff was moderately limited in his ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to complete a normal workday and workweek without interruptions from psychologically based

---

[3] The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). *Diagnostic and Statistical Manual of Mental Disorders–Fourth Edition* ("DSM-IV"). A GAF of 51-60 is defined as manifesting "moderate symptoms" (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). (Id.).

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to respond appropriately to changes in the work setting (Tr. 400-401, 414).  She also found Plaintiff was mildly limited in his activities of daily living and that he had mild difficulties maintaining social functioning (Tr. 414).

On January 27, 2009, Plaintiff saw Dr. Oppenheim for a neurologic follow-up appointment (Tr. 365, 419).  The doctor noted that while Plaintiff may have been sleep deprived when he had the seizure at work in December 2008, "his initial EEG was indicative of a primary generalized epilepsy." (Id.).  Dr. Oppenheim reinforced the need for Plaintiff to refrain from driving until he had been free of seizures for six months. (Id.).

On April 30, 2009, Plaintiff saw Dr. Oppenheim for another neurologic follow-up appointment (Tr. 477).  The doctor noted Plaintiff was taking Depakote and had remained seizure free since January 2009.  (Id.). He stated that Plaintiff was doing well with seizure control, but he still considered Plaintiff "to be unsafe to return to his previous work as a construction site security guard." (Id.).  Dr. Oppenheim also filled out a seizure questionnaire provided by Plaintiff's attorney in which he reported that he had diagnosed Plaintiff with primary generalized epilepsy (Tr. 478).  The doctor reported that Plaintiff does not always have warning of an impending seizure and cannot always take safety precautions when he feels a seizure coming on (Tr. 478-479).  The doctor noted that Plaintiff experiences confusion and exhaustion after a seizure and needs to stop all activities after a seizure (Tr. 479).  Dr. Oppenheim opined that Plaintiff could not work at heights, could not work with power machines that require an alert operator, and could not operate a motor vehicle (Tr. 480).  But, he found Plaintiff was capable of performing low stress jobs (Tr. 481).

On June 1, 2009, a non-examining state agency consultant reviewed the record and concluded that Plaintiff was mildly limited in his activities of daily living and had mild difficulty maintaining concentration, persistence or pace[4] (Tr. 493).  On June 3, 2009, another non-examining state agency consultant reviewed the record and opined that Plaintiff was capable of performing light work (Tr. 498).

In September and October 2009 and in April 2010, Plaintiff reported to his cardiologist at Florida Cardiology that he had no fatigue or dizziness (Tr. 575, 578, 581 and 584).

On April 1, 2010, Plaintiff saw Joseph C. Flynn, Jr., M.D. at the Spine and Scoliosis Center due to back pain.  (Tr. 568-569).  Imaging studies revealed decreased disc space at C6-C7, L4-L5, and L5-S1 and osteophytes at the anterior aspect of C6-C7. (Tr. 569).  Dr. Flynn's impression was low back pain without radicular symptoms or signs, neck pain without radicular symptoms or signs, and degenerative disc disease.  (Id.).  He observed that Plaintiff's range of motion in his back was "mildly limited in all planes," and a straight leg test and lasegue sign were negative for both legs.  (Id.).  The doctor also noted that Plaintiff had a normal gait and that he was able to heel walk and toe walk. (Id.).

On April 14, 2010, Dr. Oppenheim wrote on a prescription form that Plaintiff "has not been able to work since Dec. 1, 2008"[5] (Tr. 529).  There are no medical treatment

_____

[4] The consultant failed to make any findings regarding Plaintiff's ability to maintain social functioning. (Tr. 493).

[5] In her decision, the ALJ gives September 9, 2010 as the date of Dr. Oppenheim's April 14, 2010 opinion.  (Tr. 31).  The ALJ's decision is dated July 13, 2010, a date undeniably before September of 2010 and in the record, the form is dated April 14, 2010, so I have used the April date when referring to this entry.

notes from this date.  The ALJ determined that this opinion was contrary to Dr.

Oppenheim's previous treatment and progress notes, and completely opposite to his April

2009 opinion (Tr. 31).  For these reasons, the ALJ assigned little to no weight to this

opinion.  (Id.).

Plaintiff filed for DIB and SSI benefits alleging the onset of his disability on

September 1, 2008 (Tr. 25).  His application was denied initially and upon

reconsideration.  (Id.).  He requested and received a hearing, which was held on June 1,

2010 in Orlando, Florida.  (Id.).  Plaintiff alleged he could not work due to back problems,

heart problems, and anxiety (Tr. 179, 209, 220, 222).  At the administrative hearing, he

testified that he had no problem sitting, that he could lift 20 pounds, and that he walked

around the block for exercise (Tr. 51 and 57).  Plaintiff was 48 years old when the ALJ

rendered her decision (Tr. 44-45).

The ALJ determined that Plaintiff had the following severe impairments: diabetes

mellitus, hypertension, seizures, back pain, and affective disorder (Tr. 27, Finding No. 3).

Despite these impairments, the ALJ assigned Plaintiff the following residual functional

capacity ("RFC") assessment:

> Perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b).  The claimant is able to frequently lift and carry 10
> pounds and occasionally 20 pounds; stand and walk about 2
> hours of an 8-hour workday; and sit for 6 hours of an 8-hour
> workday.  He should avoid heights.  He should never climb or
> operate moving machinery.  The claimant's mood is a little
> anxious at times, which intermittently affects his ability to
> concentrate on complex, detailed tasks; however, he is able to
> perform simple, routine, repetitive tasks.

(Tr. 29, Finding No. 5).

Relying on vocational expert ("VE") testimony, (Tr. 61-64), the ALJ found Plaintiff

could perform other work, and therefore, was not disabled (Tr. 33-34, Finding Nos. 10,

11).  Plaintiff timely filed a Request for Review of the ALJ's decision and submitted to the Appeals Council, copies of the pharmacy information sheets for the medications he was taking.  On the pharmacy sheets, Plaintiff underlined the side effects he said he experiences (Tr. 686-716).  Plaintiff also provided the Appeals Council copies of pages from the Physicians' Desk Reference ("PDR") which listed the side effects of two of his medications (Tr. 151-153; 686-689; 691-692; 694-716; and 690; and 693).  The Appeals Council denied Plaintiff's request for review on September 8, 2011 (Tr. 17-18). Accordingly, the ALJ's July 13, 2010 decision is the final decision of the Commissioner. Plaintiff timely filed this action for judicial review on October 17, 2011, he has exhausted all available administrative remedies, and his case is properly before this Court.  (Doc. 1).

On appeal, Plaintiff argues that (1) the ALJ failed to apply the correct legal standard to his testimony and subjective statements concerning his pain and other limitations; (2) the ALJ failed to make findings as to the side effects of Plaintiff's medication; and (3) the Appeals Council failed to consider new material evidence submitted by Plaintiff.  (Doc. 15).

## II. The ALJ's Decision

In determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration, codified in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Using this process, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004).  The claimant bears

the burden of persuasion through step four and at step five the burden shifts to the

Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at

1241 n.10.

At step one the ALJ found Plaintiff had not engaged in substantial gainful activity

since his September 1, 2008, alleged onset date (Tr. 27).  At step two the ALJ determined

Plaintiff's severe impairments as defined in 20 C.F.R. §§ 404.1520(c) and 416.926(b).

(Id.).  At step three the ALJ concluded that Plaintiff did not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments

in 20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926.  The ALJ also determined

Plaintiff's RFC.  (Id.).  At step four, the ALJ decided Plaintiff could not perform any past

relevant work (Tr. 32).  Finally, at step five, relying on the VE's testimony, and after

considering Plaintiff's age, education, work, experience and RFC, the ALJ concluded that

there were other jobs that existed in significant number in the national economy that

Plaintiff could perform (Tr. 33).  Accordingly, the ALJ held that Plaintiff had not been

under a disability within the meaning of the Act from Plaintiff's alleged September 1, 2008

onset date through July 13, 2010, the date of the ALJ's decision.  (Tr. 34).

III.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied

the correct legal standards and whether the ALJ's findings are supported by substantial

evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42

U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a

preponderance.  It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176,

1178 (11th Cir. 2011) (citation omitted).  When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"  Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### IV. Discussion

#### A.  Plaintiff's Subjective Complaints of Pain

Plaintiff argues that the ALJ did not properly consider his subjective complaints of pain including (1) his signs of impending seizures, such as trembling extremities (Tr. 48); (2) headaches caused by his hypertension (Tr. 50); and (3) being able to stand for only 30 minutes at a time due to back pain (Tr. 51).  In his brief, Plaintiff also refers to his "limitations" but never explains what he means or how the ALJ committed error with respect to these "limitations."  (Doc. 8 at 7-8).

The Eleventh Circuit has adopted a two-pronged standard for examining subjective complaints of pain.  First, the claimant must provide evidence of an underlying condition.  Next the claimant must submit either objective medical evidence confirming the severity of the alleged pain or show that the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the claim.  Wilson v. Barnhart,

284 F.3d 1219, 1225 (11th Cir. 2002).  If the ALJ discredits the claimant's subjective

testimony, she must articulate explicit and adequate reasons for doing so.  Id.  Here, the

ALJ found Plaintiff's medically determinable impairments could reasonably be expected

to cause some of his alleged symptoms.  But, after a thorough review of the evidence, the

ALJ ruled that Plaintiff's claims of totally disabling symptoms were inconsistent with the

medical evidence in the record (Tr. 30-32).  The remaining issue is whether the ALJ

articulated explicit and adequate reasons for discounting Plaintiff's testimony concerning

the severity of his pain.

Plaintiff does not identify any medical evidence tending to show he has greater

limitations than those provided for in his RFC.  He testified at the hearing that he could lift

20 pounds.  He also testified that he often has signs of impending seizure attacks, but he

could not recall how often these signs occur, whether daily or weekly, and he admitted

that when they do occur, they last for less than a minute (Tr. 21, 48).  He mentioned that

his hypertension causes him to suffer headaches, but did not testify that those headaches

are debilitating or that they interfere with his ability to conduct daily activities (Tr. 50).  The

only testimony that contradicts Plaintiff's RFC assessment is his own testimony that he

can only stand for thirty minutes at a time due to back pain (Tr. 51).  However, he has

never had surgery or any medical procedures on his back, and he has no problem sitting.

(Id.).  Treating and examining physicians have observed that Plaintiff had a normal

stance, gait, and could heel walk and toe walk (Tr. 398, 533, 538 and 569).  This is

substantial evidence to reject Plaintiff's testimony.

Plaintiff takes issue with the following statement by the ALJ:

> The claimant's longitudinal medical history is not necessarily
> consistent with his allegation of disability.  During the year
> before the claimant alleged (sic) become disabled, he

> successfully engaged in substantial gainful activity and during
> the years prior to 2007 prior (sic), he appeared to work on/off
> sometimes earning at or almost substantial activity (SGA)
> levels.

(Doc. 15 at 7-8).  Plaintiff argues this statement is not explicit or adequate and that the

ALJ made her ruling based on a lack of objective medical evidence to support Plaintiff's

claims, when all Plaintiff needed to prove was that his objectively determined medical

condition could reasonably be expected to give rise to his claim.  (Id.).

Plaintiff reads the ALJ's statement out of context.  It comes at the beginning of the

ALJ's analysis of Plaintiff's medical history and is not an ultimate finding.  Contrary to

Plaintiff's argument, the ALJ articulated a number of reasons for discrediting his

testimony.  For example, the ALJ noted that in September, 2008, after having previously

undergone a total thyroidectomy, Plaintiff told his physician he was feeling "well in

general" (Tr. 304).  Plaintiff did not report any headaches or sinus pain, and said his back

was normal (Tr. 304-5).

The ALJ gave great weight to Dr. Flynn's opinions.  The doctor only prescribed

"conservative" therapy such as physical therapy (Tr. 569).  Dr. Flynn did not prescribe any

medication to treat Plaintiff's pain, and did not restrict Plaintiff's ability to walk or stand.

See Stanton v. Astrue, Case No. 3:07-cv-015-J-TEM; 2008 WL 725595 *4 (M.D. Fla. Mar.

17, 2008) (finding the lack of limitation imposed on claimant by his doctors supported the

administrative law judge's credibility finding and ultimate decision that claimant was not

disabled); see also Jarrell v. Comm'r of Soc. Sec., 433 F.App'x 812, 814 (11th Cir. 2011)

(conservative treatment, lack of medical treatment, and lack of prescription pain

medication weighed against claimant's credibility that pain was disabling); Sheldon v.

Astrue, 268 F. App'x 871, 872 (11th Cir. 2008) (citing Wolf v. Chater, 86 F.3d 1072, 1078

(11th Cir. 1996) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.").

With the exception of Dr. Oppenheim's April 14, 2010 note made on his prescription pad, the ALJ also afforded great weight to the opinions of Dr. Oppenheim. The doctor recorded that Plaintiff had been seizure free since January 2009 (Tr. 477). He opined that Plaintiff was "doing well with seizure control," but he did not consider it safe for Plaintiff to return to his previous work as a construction site security guard. (Id.). Dr. Oppenheim said Plaintiff had a good response to his medication when he was compliant (Tr. 480). The doctor found Plaintiff did not need to take unscheduled breaks during an eight-hour work day and that Plaintiff was capable of low stress jobs (Tr. 481). The ALJ gave these opinions great weight because they are supported by other objective medical evidence in the record (Tr. 31).

The ALJ also relied on the fact that in January 2009, Plaintiff told Dr. Constant he was feeling well in general, Plaintiff did not report any headaches, and Plaintiff's examination was, overall, routine and unremarkable (Tr. 531).

Based upon the ALJ's discussion, I find that she properly considered the medical record and addressed Plaintiff's subjective complaints of pain and that she articulated valid, specific reasons for discounting Plaintiff's testimony.

## B. Plaintiff's Complaints of Side Effects

Plaintiff complains that his medications cause nervousness, dizziness, and fatigue. (Doc. 15 at 9). However, he does not identify any medical evidence supporting his position that he suffers from side effects resulting from his medication. Instead, he cites solely to his own subjective complaints. Plaintiff's reporting of side effects has been inconsistent. In October 17, 2008 he wrote in a disability report that many of his

medications made him tired and that his cholesterol medication made him nervous and dizzy (Tr. 183).  That same month, in a work history report, he wrote that his medication made him dizzy (Tr. 212).  But, in 2009, he reported that none of his medications gave him side effects except for his high blood pressure medication, which made him tired (Tr. 233).  And, Plaintiff did not report to his treating physicians that his medications caused side effects.

Plaintiff argues that the ALJ failed to make findings related to these side effects as required by Cowart v. Schweiker, 662 F.2d 731 (11th Cir. 1981).  In Cowart, the Eleventh Circuit found that an ALJ failed in his duty to fully develop the record because he did not elicit testimony or make findings regarding the effect of prescribed medications upon an unrepresented claimant's ability to work.  662 F.2d at 737.  Cowart is distinguishable from this case in that here, Plaintiff was represented by counsel at his hearing and had an opportunity to present all relevant evidence.  Despite having the opportunity, Plaintiff did not claim at the hearing that he suffered from any side effect that contributed to his disability.  When asked why he couldn't work, Plaintiff answered "[b]ecause the doctor told me I can't work . . . because of the epileptic attacks" (Tr. 46).  See Colon ex. Rel. Colon v. Comm'r of Soc. Sec., 411 F. App'x 236, 238 (11th Cir. 2011) (finding persuasive that the claimant "did not mention his medication side effects in response to the ALJ's questions about why he could not return to work."); Cherry v. Heckler, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985) (failure of Secretary of Health and Human Services to further investigate claimant's claim of drug addiction and mental problems did not deprive Plaintiff of procedural due process rights where Plaintiff was represented by counsel at hearing and had the opportunity to present all information relevant); Vesy v. Astrue, 353 F. App'x  219, 225 (11th Cir. 2009) ("Although there was some evidence that Vesy

suffered from side effects caused by her medications, she did not allege that those side effects contributed to her disability and notably, was represented by counsel."). Accordingly, I find that the ALJ did not err in failing to specifically address Plaintiff's complaints of side effects.

## C.  The Appeals Council

Plaintiff contends that the Appeals Council did not apply the correct legal standards because it failed to consider the pharmacy information sheets and pages from the PDR he supplied.  Plaintiff characterizes this information as new, material evidence but the information sheets were for medications Plaintiff was taking prior to the date of the ALJ's decision.  The Appeals Council "must consider new, material, and chronologically relevant evidence and must review the case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007).  When the Appeals Council refuses to consider new evidence and denies review, its decision is subject to judicial review because it amounts to an error of law.  Keeton v. Dep't of Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).  The Appeals Council stated that they "considered the reasons [Plaintiff] disagree[d] with the decision and the additional evidence . . ." and ultimately the Council "found that this information does not provide a basis for changing the [ALJ]'s decision" (Tr. 1-2).  The Eleventh Circuit has found such statements to be proof that the Appeals Council did not err by failing to consider new evidence.  See Barclay v. Comm'r of Soc. Sec. Admin., 274 F. App'x 738, 743 (11th Cir. 2008).  Here, the Appeals Council did not err in refusing to remand Plaintiff's case to the ALJ based on new evidence, because the evidence was not new, and was not "material

such that a reasonable possibility exists that the new evidence would change the administrative result." Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).

The Appeals Council could also disregard the pharmacy sheets and pages from the PDR because the side effects Plaintiff pointed to far exceed the effects he originally reported.  See Colon ex rel. Colon v. Comm'r of Soc. Sec., 411 F. App'x 236, 239 (11th Cir. 2011) (holding that plaintiff's list of underlined pharmacy information sheets had little probative value, in part because the side effects were cumulative of those already documented or far exceeded those reported to the ALJ); see also Hoppel v. Comm'r of Soc. Sec., No. 6:11-cv-1148-Orl-31DAB, 2012 WL 2115504 *6 (M.D. Fla. May 25, 2012); Hildebrand v. Comm'r of Soc. Sec., No. 6:11-cv-1012-Orl-31-DAB, 2012 WL 1854238 *7 (M.D. Fla. May, 4, 2012).

Finally, the pharmacy information sheets and pages from the PDR are conclusions.  The Appeals Council is free to give little weight to conclusory assertions. See Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903 (11th Cir. 2011) (Appeals Council was free to give little weight to the conclusory assertions contained in questionnaires because they consisted of items checked on a survey with no supporting explanations).

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Court **AFFIRM** the Commissioner's final decision, direct the Clerk be directed to enter judgment accordingly, and **CLOSE** the file.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on the 23rd day of January, 2013.

THOMAS B. SMITH
United States Magistrate Judge


Copies furnished to:

Presiding United States District Judge
Counsel of Record